1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CLAUDE TIMOTHY STEVENSON,                   No.  2:15-cv-0463-CKD

12                  Plaintiff,

13            v.                                  ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                    Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will grant

21   plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary

22   judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

23   I.      BACKGROUND

24          Plaintiff, born February 15, 1962, applied on February 24, 2010 for SSI, alleging

25   disability beginning January 1, 2006.  Administrative Transcript ("AT") 248-55.  Plaintiff alleged

26   he was unable to work due to hepatitis C, gastrointestinal problems, cirrhosis of the liver, and

27   psychotic and depressive disorders, among other impairments.  AT 439, 468.  In a decision dated

28

                                                   1

June 27, 2014, the ALJ determined that plaintiff was not disabled.[1]  AT 17-26**.**  The ALJ made
the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant has not engaged in substantial gainful activity
> since February 24, 2010, the application date.
>
> 2.   The claimant has the following severe combination of
> impairments: psychotic disorder not otherwise specified, mood
> disorder not otherwise specified, a history of heroin dependence,
> hepatitis C virus, schizoaffective disorder, anti-social personality
> disorder, gastroesophageal reflux disease, a history of acute
> pancreatitis, a history of bilateral thumb and right foot surgery with
> arthritis and residual pain, degenerative disc disease of the lumbar
> spine, degenerative disc disease and stenosis of the cervical spine
> with radiculopathy and C5 nerve root involvement, right carpal
> tunnel syndrome, and chronic obstructive pulmonary disorder.

---

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful
> activity?  If so, the claimant is found not disabled.  If not, proceed
> to step two.
>
> Step two:  Does the claimant have a "severe" impairment?
> If so, proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three:  Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past
> work?  If so, the claimant is not disabled.  If not, proceed to step
> five.
>
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
burden if the sequential evaluation process proceeds to step five.  Id.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b). He can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday; the claimant cannot climb ladders, ropes, or scaffolds, the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl; the claimant can have occasional face-to-face interaction with the general public; the claimant can frequently push and pull, perform fine manipulation and gross manipulation activities, and the claimant can perform only simple, routine, and repetitive tasks. In addition, he must avoid concentrated exposure to pulmonary irritants, hazards, and temperature extremes.

5. The claimant has no past relevant work.

6. The claimant was born on February 15, 1962, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 24, 2010, the date the application was filed.

AT 19-25.

II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

disabled:  (1) failed to fully and fairly develop the record with regard to the impact plaintiff's

impairments had on his ability to perform work-related functions; (2) failed to obtain an updated

medical opinion from a medical expert regarding whether plaintiff's spinal impairments were

equivalent to Listing 1.04; and (3) failed to provide clear and convincing reasons for finding

plaintiff's testimony less than fully credible.

3

1    III.    LEGAL STANDARDS

2           The court reviews the Commissioner's decision to determine whether (1) it is based on

3    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

4    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

5    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

6    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

7    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

8    Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

9    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

10   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

11   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

12   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13          The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

14   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

15   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

16   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

17   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

18   administrative findings, or if there is conflicting evidence supporting a finding of either disability

19   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

20   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22   IV.    ANALYSIS

23          A.  The ALJ Failed to Fully and Fairly Develop the Record

24          First, plaintiff argues that the ALJ failed to fully and fairly develop the record because he

25   did not obtain a consultative examination for plaintiff's physical and mental impairments, and

26   based his residual functional capacity ("RFC") determination on an incomplete medical record

27   that did not permit the ALJ to engage in a proper evaluation of the medical evidence.

28   /////

4

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

It is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Indeed, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5.

Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). In short, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150).

"The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. However, as some courts have persuasively observed, the ALJ "does not have to exhaust every possible line of

1  inquiry in an attempt to pursue every potential line of questioning.  The standard is one of

2  reasonable good judgment."  Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation

3  omitted).

4         Here, the record upon which the ALJ's physical RFC determination was based was

5  inadequate for the ALJ to properly evaluate the medical evidence and arrive at a physical RFC

6  conclusion that was supported by substantial evidence.  The ALJ determined that plaintiff's spinal

7  impairments warranted a limitation to light work and a limitation on his use of his upper

8  extremities.  AT 24.  However, the sole medical opinion in the record was that of Dr. Pancho, a

9  State agency non-examining physician who reviewed plaintiff's medical records then-existing on

10  December 20, 2010 and determined that plaintiff did not have a severe impairment.  AT 766-67.

11  Dr. Pancho's opinion was based solely on a review of the limited medical evidence developed

12  between November 2008 and June 2010.  Id.  This evidence did not include any of plaintiff's

13  treating records regarding the progression of his spinal impairments, which were developed after

14  the date of Dr. Pancho's opinion.  Furthermore, the medical record contained no opinion evidence

15  from any of plaintiff's treating physicians, nor did plaintiff undergo a consultative examination

16  regarding the functional impact of his physical and mental impairments.[2]  The only medical

17  evidence in the record regarding plaintiff's spinal impairments is plaintiff's treating records

18  spanning from November 2011 to May 2014.  See AT 907, 1068.  While some of these records

19  indicate that plaintiff's spinal problems were "severe," e.g., AT 931, 986, 1068, they do not

20  describe the impact of these impairments on a function-by-function basis in a manner that would

21  provide the ALJ with a sufficient medical foundation to properly consider plaintiff's physical

22  RFC.[3]  See Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir.

23  _____

[2] The record shows that plaintiff was scheduled to attend two psychological consultative
24  examinations but that plaintiff did not appear for either appointment due to his incarceration on
those dates.  AT 950-53, 963.  However, it appears from the record that no physical consultative
25  examinations were ever scheduled.

26  [3] The court notes, however, that the record includes a California Department of Corrections
27  disability placement program verification form dated December 1, 2008 that indicates that
plaintiff had a "mobility impairment," required the use of a cane, had a restriction from using
28  stairs, and could only sleep in a lower bunk.  AT 305.  While this note does not directly attribute

1  1996) ("With few exceptions, . . . an ALJ, as a layperson, is not qualified to interpret raw data in a

2  medical record.").

3       While the ALJ discussed the medical records regarding plaintiff's spinal impairments

4  when determining the impact those impairments had on his physical RFC, it is evident from the

5  ALJ's discussion of that evidence that he made an independent evaluation and improperly

6  substituted his judgement for that of a medical expert.  The Commissioner argues that this was

7  not the case because the ALJ cited to treating records in his discussion of plaintiff's physical

8  impairments that included the medical impressions and findings of a medical clinician in support

9  of his physical RFC determination.  However, while the treating records reviewed by the ALJ

10 include medical impressions from plaintiff's treating physicians; those impressions consist of

11 diagnoses and descriptions of plaintiff's spinal impairments obtained from imaging records of

12 plaintiff's back.  E.g., AT 905, 907, 973, 986.  They do not indicate the impact those diagnosed

13 impairments had on plaintiff's ability to work on a function-by-function basis.[4]  Nevertheless, the

14 ALJ reviewed the medical findings in these records and made a physical RFC determination

15 based on his own interpretation of that raw medical evidence.  Such a determination was

16 impermissible and cannot form the basis of an ALJ's RFC conclusions.  See Day v. Weinberger,

17 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore

18 could not permissibly go outside record to consult medical textbooks for purpose of making his

19 ─────────────────────────────

20 these limitations to plaintiff's spinal impairments, they do reasonably indicate that such
   impairments may have caused plaintiff physical limitations as early as 2008.  The ALJ did not

21 address the potential significance of this evidence in his physical RFC discussion.  See AT 22-23.

22 [4] A treating note dated February 19, 2013 appears to indicate that Dr. Gregorious, one of
   plaintiff's treating physicians, reviewed an MRI of plaintiff's spine and determined that plaintiff's

23 lumbar degenerative disc disease rendered plaintiff permanently disabled.  AT 976.  The
   Commissioner contends that it is not clear from this note that this opinion was issued by Dr.

24 Gregorious or another proper medical source due to an ambiguous initial on the document.  It is
   also unclear whether Dr. Gregorious actually assessed plaintiff as disabled or whether he merely

25 recorded plaintiff's own report of disability.  See id.  Furthermore, the ALJ failed to specifically
   discuss this record when determining plaintiff's RFC.  See AT 22-23.  Given the ambiguities in

26 Dr. Gregorious' ostensible opinion, the ALJ should have made an appropriate inquiry to clarify
   these ambiguities and should have specifically addressed this evidence in his decision.  See

27 Mayes, 276 F.3d at 459-60 (an ALJ's duty to develop the record arises when the record contains

28 ambiguous evidence).

1  own assessment of the claimant's physical condition); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.

2  1999) ("As a lay person, . . . , the ALJ was simply not qualified to interpret raw medical data in

3  functional terms and no medical opinion supported the determination."); Manso-Pizarro, 76 F.3d

4  at 17; Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the

5  temptation to play doctor and make their own independent medical findings.").

6       Given the dearth of medical evidence in the record indicating the degree to which

7  plaintiff's spinal impairments impacted his physical functional capacity, the ALJ had a duty to

8  further develop the record.  However, he did not fulfill that duty.  He did not seek to have plaintiff

9  undergo a physical examination, or even obtain further review of plaintiff's treating records by a

10  State agency physician based on the medical records developed after 2010.  Nor did the ALJ keep

11  the record open after the hearing to allow for further supplementation.[5]  Furthermore, the ALJ

12  improperly interpreted the treating records that were available and made an RFC determination

13  based on that raw medical data.  Accordingly, the ALJ committed prejudicial error that

14  invalidated his physical RFC findings.  See Tonapetyan, 242 F.3d at 1151 (reversing and

15  remanding for further proceedings where ALJ's RFC determination was based on an inadequately

16  developed medical record); Nguyen, 172 F.3d at 35 (reversing and remanding for further

17  proceedings where the ALJ rendered an RFC determination was based on his own interpretation

18  of raw medical data that was not supported by medical opinion evidence).

19      B.  The ALJ's Error Warrants Remand for Further Proceedings

20       When the court finds that the ALJ committed prejudicial error, it has the discretion to

21  remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

22  Generally, if the court finds that the ALJ's decision was erroneous or not supported by substantial

23  evidence, the court must follow the "ordinary remand rule," meaning that "the proper course,

24  except in rare circumstances, is to remand to the agency for additional investigation or

25  explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  A

26

27  [5] The court also notes that the ALJ did not take such steps to supplement the record even after the Appeals Council initially remanded the case back to the ALJ with the direction "to obtain

28  additional evidence concerning the claimant's impairment[s]."  AT 17.

remand for an award of benefits is inappropriate where the record has not been fully developed or there is a need to resolve conflicts, ambiguities, or other outstanding issues.  Id. at 1101.

Here, the ALJ's error requires this matter to be remanded for further proceedings.  As discussed above, the record in this action regarding plaintiff's spinal impairments has not been adequately developed such that the ALJ could make a proper RFC determination regarding the functional impact of those impairments on plaintiff's ability to perform physical work-related activities.  Accordingly, development of the record through further administrative proceedings is warranted.

On remand, the ALJ shall obtain a consultative physical examination by a physician who has full access to plaintiff's past medical records.  The consultative examination shall focus on the functional limitations caused by plaintiff's physical impairments, in particular, his spinal impairments,[6] during the relevant time period, but shall also consider whether plaintiff's impairments and functional capacity improved or worsened thereafter through the present.[7]  The ALJ shall also obtain clarification of the apparent ambiguities discussed above with regard to the treating note in the record dated February 19, 2013.  AT 976.  Furthermore, the ALJ should also schedule plaintiff for a further consultative psychological examination.[8]  The ALJ may obtain

---

[6] The court also notes that the record also does not contain any medical opinions or other records directly reflecting upon the functional impact of plaintiff's wrist impairments and subsequent hand surgeries.  Accordingly, the consultative physical examiner should also be requested to provide an opinion concerning the impact and materiality of plaintiff's wrist impairments.

[7] Although the consultative examination will take place in the present, the consultative examiner shall use best efforts, utilizing the findings of the present physical examination, plaintiff's past medical records, and the examiner's clinical expertise and judgment, to render an opinion regarding plaintiff's functional capacity during the relevant period.

[8] The court recognizes that the ALJ earlier ordered two consultative psychological examinations in this matter that plaintiff failed to attend.  AT 950-53.  However, plaintiff's failures to attend were a result of his incarceration on the scheduled examination dates, indicating that plaintiff's absences were not willful.  AT 963.  Furthermore, the only opinion evidence in the record regarding the functional impact of plaintiff's mental impairments is that of Dr. Pancho, a non-examining State agency physician who only reviewed plaintiff's medical records developed prior to December 2010.  Accordingly, the ALJ should obtain opinion evidence that addresses plaintiff's mental impairments for the entire relevant time period.  See Garrison v. Colvin, 759 F.3d 995, 1017-18 (9th Cir. 2014) (cautioning ALJs against drawing the inference that a claimant can function effectively in the workplace from medical reports indicating improvement of mental

opinions from plaintiff's treating physicians regarding plaintiff's physical and mental limitations, if necessary.  The ALJ is also free to develop the record in other ways, as needed.

Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ to credit any particular opinion or testimony.  The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period—provided that the ALJ's determination complies with applicable legal standards and is supported by substantial evidence in the record as a whole.

C. <u>Other Issues</u>

Plaintiff also argues that the ALJ further failed to fulfill his duty to fully and fairly develop the record by not obtaining an updated medical opinion from a medical expert regarding whether plaintiff's spinal impairments were equivalent to Listing 1.04, which plaintiff contends violated SSR 96-6p.[9]  Because the court finds the record inadequately developed regarding plaintiff's spinal impairments, it declines to address the substance of this issue at this juncture. Further development of the record regarding plaintiff's spinal impairments will allow the ALJ to make an informed decision on remand as to whether SSR 96-6p mandates him to obtain an updated medical expert opinion regarding whether plaintiff's spinal or other impairments are equivalent to Listing 1.04, or any other listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

////

---

impairments "when no doctor or other medical expert has opined, *on the basis of a full review of all relevant records*, that [the claimant] is capable of working or is prepared to return to work" (emphasis added)).

[9] SSR 96-6p provides, in pertinent part:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances: . . .

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable[.]

1    Finally, plaintiff contends that the ALJ erred in his credibility findings regarding

2  plaintiff's testimony.  Because the court will remand this action for further development of the

3  record, it declines to address this argument at this time.  The ALJ's reasons for discounting

4  plaintiff's testimony were based largely on discrepancies the ALJ found to exist between

5  plaintiff's testimony and the objective medical evidence in the record.  AT 22, 24.  Accordingly,

6  the ALJ's findings regarding credibility may change once the record has been more fully

7  developed.  On remand, the ALJ will have the opportunity to reassess the credibility of plaintiff's

8  testimony in light of the further-developed record.

9  V.      CONCLUSION

10    For the reasons stated herein, this matter will be remanded under sentence four of 42

11  U.S.C. § 405(g) for further development of the record and for further findings addressing the

12  deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

13    1.  Plaintiff's motion for summary judgment (ECF No. 25) is granted for purposes of

14  further development of the record consistent with the court's directions set forth above;

15    2.  The Commissioner's cross-motion for summary judgment (ECF No. 26) is denied; and,

16    3.  This matter is remanded for further proceedings consistent with this order.

17  Dated:  October 27, 2015

18                                                                _____
                                                                CAROLYN K. DELANEY
19                                                                UNITED STATES MAGISTRATE JUDGE

20  11 stevenson0463.ss

21

22

23

24

25

26

27

28

11